IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION


LAFAYETTE INSURANCE COMPANY                                              PLAINTIFF


v.                                      No. 5:04CV00094 GH


ALTHEIMER OIL COMPANY; JOHNATHON
LEWIS COLE; AND LAUVERN P. JONES, as next
friend of HAYWOOD JONES, a minor                                        DEFENDANTS

## MEMORANDUM OPINION AND ORDER

On November 3rd, a bench trial was held on plaintiff's complaint for declaratory relief that

it owes no duty to defend or indemnify Altheimer Oil and/or Johnathon Lewis Cole under an

insurance policy issued to Altheimer Oil in the personal injury case of Jones v. Cole, CV-3002-942-

1, in the Jefferson County Circuit Court.  Proposed findings of fact and conclusions of law and post-

trial briefs were submitted to the Court by plaintiff and Jones on December 4th.

### FINDINGS OF FACT

1.      On or about March 10, 2001, Altheimer Oil Company ("Altheimer Oil") purchased

Commercial Lines Policy No. 203 30113918 ("the Policy") from Lafayette.

2.      The Policy was issued to Altheimer Oil for the policy period March 10, 2001 to March 10,

2002.

3.      The Policy contained a Schedule of Covered Autos which included a 1992 Cadillac Deville,

VIN 1G6CD53B1N4282874 ("the subject Cadillac").

4.     At the time the subject Cadillac was added to the Policy, it was owned by Bill E. Jones, Jr. ("Bubba"), the son of the owner of Altheimer Oil, Ms. Frieda Jones.

5.     The Policy includes a Business Auto Coverage Form which states that Lafayette "will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto' . . . . [Lafayette] will have the right and duty to defend any 'insured' against a 'suit' asking for such damages . . . . However, [Lafayette] will have no duty to defend 'any' insured against a 'suit' seeking damages for 'bodily injury' or 'property damage' . . . to which this insurance does not apply."

6.     With respect to the Business Auto Coverage, the term "insured" includes anyone using, with the named insured's permission, a covered auto owned, hired, or borrowed by the named insured.


7.     With respect to the Business Auto Coverage, the term "insured" specifically does not include an employee using an automobile owned by that employee.

8.     The Policy also includes a Commercial General Liability Coverage Form which states that Lafayette "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."

9.     The Commercial General Liability Coverage does not apply to bodily injury or property damage "arising out of the ownership, maintenance, use or entrustment to others of any . . . 'auto' . . . owned or operated by or rented to any insured."

10. With respect to the Commercial General Liability Coverage, the term "insured" includes the organization (i.e., Altheimer Oil) and only those employees which are acting within the scope of their employment or performing duties related to the conduct of the business.

11. In early May 2001, Cole was at Bubba's house after the funeral of Bubba's child. He had ridden there with Bubba. When he got ready to leave, Bubba told him to drive the subject Cadillac home instead. Cole inquired as to whether Bubba was interested in selling the vehicle, and Bubba replied that he might be, but no further discussion about selling the subject Cadillac occurred at that time.

12. A week or so later, Bubba came and got the subject Cadillac and drove it away and continued to drive it for a period of time.

13. On May 25, 2001, Cole was working at the Git-N-Go Service station when Bubba stopped in and asked Cole if he was still interested in buying the subject Cadillac. Cole responded in the affirmative, and Bubba offered to sell it to him for $4,000. Cole responded that $4,000 was too much because of some damage on the rear end of the subject Cadillac. Cole offered to pay $4,000 if this damage was repaired. Instead, Cole and Bubba ultimately agreed on a $3,000 purchase price. Cole was to pay $2,000 that day and pay the remaining $1,000 in installment payments.

14. After reaching this agreement, Cole and Bubba went to Pine Bluff National Bank that same day, May 25, 2001, and Cole withdrew $2,000 from his saving account and paid Bubba. On the day this withdrawal was made, Cole took possession of the subject Cadillac and Bubba never drove it again. Additionally, around a week or so later, Cole and Bubba agreed that Bubba would take Cole's Oldsmobile Omega in lieu of $800 of the $1,000 Cole still owed Bubba – leaving $200 still to be paid by Cole at that time.

15.     Cole's account records from Pine Bluff National Bank confirm that he withdrew $2,000 on May 25, 2001.  This is the only such withdrawal in Cole's bank records.

16.     After the sale, Cole proceeded to try to get the title to the subject Cadillac changed to reflect the fact he owned it.  Approximately a week after the sale of the subject Cadillac on May 25, 2001, Cole asked Bubba for a bill of sale.  Bubba complied and wrote out a handwritten bill of sale which reflected the purchase.  In fact, Cole and Bubba had trouble spelling "Cadillac" as reflected in the handwritten bill of sale which was admitted as Joint Exhibit 5 at the trial of this matter.

17.     Around this same time, on June 6, 2001, Cole requested and received a quote for insurance from R&T Insurance on the subject Cadillac.  This quote, which is Exhibit 12C, does not mention the Oldsmobile Omega.  This fact further confirms that by this date Cole had given the Omega to Bubba in lieu of an $800 payment on the subject Cadillac.

18.     On June 22, 2001, Cole and his wife had driven his Mallard Express truck from his personal residence to K-Mart to purchase a telephone for his personal residence.  They then returned to Cole's residence and discovered the box in which the phone was supposed to be was empty.  By this time, Cole's brother-in-law had arrived for a visit, and he and Cole decided to return to K-Mart to get the phone.  As they were preparing to leave, Cole's brother-in-law asked Cole whose Cadillac was in the driveway.  Cole responded that he had just bought it, and they took the Cadillac to go get the phone.  It was during this trip that the accident involving Defendant Haywood Jones occurred.

19.     The Altheimer Police Department responded to the accident and completed an accident report.  While it is true that Bubba was listed as the owner of the vehicle in the report and that the license plate on the car was still the one that had been obtained by Bubba, Cole testified that he

simply handed the investigating officer the papers out of the glove compartment and never spoke to the officer about ownership of the vehicle.[1]

20.    After the accident, Bubba's mother, Frieda Jones, got involved and made sure the paperwork reflecting the May 2001 sale was completed.  The first thing done was to have a more formal bill of sale executed which reflected a sale date of May 26, 2001.  The title to the subject Cadillac was obtained from Classic Motorcars reflecting its sale of the subject Cadillac to Bubba in July 2000.  After the title certificate from Classic Motorcars was received by Bubba, a new title certificate in his name was issued which he, in turn, assigned to Cole reflecting a sale date of May 26, 2001.

21.    Cole was an employee of Mallard Express and was not an Altheimer Oil employee at the time of the accident.

22.    Cole was not acting within the scope of his employment with Mallard Express at the time of the accident.

23.    Lafayette and its agents, employees and attorneys did not act improperly in their investigation of the accident and ownership of the subject Cadillac.

24.    Any concern this Court might otherwise have with the testimony in Bubba's sworn statement to the effect that the sale occurred "a couple of months" after the death of his child on May 7, 2001 or with the other points argued by Jones in her post-trial brief, is alleviated by the fact that, at every point in this case, Cole and Bubba have consistently recalled the event that completed the sale, i.e., that the sale of this car was completed on the day that the Cole withdrew $2,000 from his savings

---

[1]That action, of course, is opposite of what happened in Rook v. Moseley, 236 Ark. 290 at 292, 365 S.W.2d 718 at 720 (1963).

account at Pine Bluff National Bank. Joint Exhibit 7 confirms that this event occurred on May 25, 2001 – a month before the accident. This record, of course, was created by a neutral party.

25. Both Bubba and Cole intended that possession, use and control and, therefore, ownership of the subject Cadillac pass to Cole on or about May 25, 2001.

26. On December 18, 2003, Defendant Lauvern P. Jones, as next friend of Haywood Jones, a minor, filed a complaint in the Circuit Court of Jefferson County, Arkansas styled <u>Lauvern P. Jones, as next friend of Haywood Jones, a minor v. Johnathon L. Cole, and Altheimer Oil Company, Inc.</u>, No. CV-2003-942-1 ("the <u>Jones</u> Complaint"). The <u>Jones</u> Complaint alleged that Cole caused Haywood Jones damages in an automobile accident on June 22, 2001.

25. The <u>Jones</u> Complaint further alleged that Altheimer Oil was liable because the vehicle in question was owned by Altheimer Oil and Cole was an employee of Altheimer Oil and was a permissive user of the vehicle.

## CONCLUSIONS OF LAW

1. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202. Venue is proper in the Eastern District of Arkansas pursuant to 28 U.S.C. § 1391.

2. Cole was the owner of the vehicle at the time of the accident. Title passes to the buyer at the time of delivery despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place. Ark. Code Ann. § 4-2-401(2). Moreover, any retention or reservation by the seller of the title to goods delivered to the buyer is considered to be a security interest. Ark. Code Ann. § 4-2-401(1).

3.     The case law is in accord:  Once possession, use and control over an automobile is transferred to the buyer, he becomes the owner.  <u>United States Fidelity & Guar. Co. v. Glenn</u>, 233 Ark. 215, 217, 343 S.W.2d 777, 778 (1961).  See also, <u>Hardware Dealers Mut. Fire Ins. Co. v. Holcomb</u>, 302 F. Supp. 286 (W.D. Ark. 1969); <u>Olin Matheison Chem. Corp. v. S.W. Cas. Co.</u>, 149 F. Supp. 600 (W.D. Ark. 1957).

4.     A failure to change the title certificate does not deprive the buyer of his status as owner. <u>Glenn</u>, 233 Ark. at 217, 343 S.W.2d at 778.  Furthermore, neither the fact that money is still owed to the seller, nor the fact that the owner could take the automobile back if the buyer failed to make payments, changes the rule that the buyer is the owner of the vehicle once he takes possession. <u>Glenn</u>, 233 Ark. at 217, 343 S.W.2d at 778.

5.     Finally, "ownership of an insured vehicle at the time of the accident [is] a prerequisite to coverage thereunder[,]" and, once the insured sells the vehicle, it can no longer be used with his permission so as to bring a non-insured driver under the insured's policy.  <u>Olin Matheison</u>, 149 F. Supp. at 608-09.

6.     Defendant Lauvern P. Jones ("Ms. Jones") does not dispute the above description of the law and has never offered any contrary authority.  In her counsel's words, "if Mr. Cole is deemed to have actually purchased this car on [or before] June 22, 2001 then plaintiffs should be awarded judgment in their favor."

7.     The Policy provides no coverage for the allegations in the <u>Jones</u> Complaint.

8.     Lafayette has no duty to defend Cole in the Circuit Court of Jefferson County, Arkansas lawsuit styled <u>Lauvern P. Jones, as next friend of Haywood Jones, a minor v. Johnathon L. Cole, and Altheimer Oil Company, Inc.</u>, No. CV-2003-942-1, and is entitled to a declaration of that fact.

9.      Lafayette has no duty to indemnify Cole for any loss he may suffer as a result of the Circuit Court of Jefferson County, Arkansas lawsuit styled <u>Lauvern P. Jones, as next friend of Haywood Jones, a minor v. Johnathon L. Cole, and Altheimer Oil Company, Inc.</u>, No. CV-2003-942-1, and is entitled to a declaration of that fact.

10.     Cole was served with a copy of the complaint and summons on March 29, 2004.

11.     To date, Cole has still not answered or otherwise appeared in this action and, therefore, is in default.

12.     Lafayette is entitled to a default judgment against Cole.

A separate judgment will be entered in accordance with this memorandum opinion and order.

IT IS SO ORDERED this 22nd day of March, 2007.

_George Howard, Jr_
UNITED STATES DISTRICT JUDGE